IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SUNIL THAKRAN,<br>    Plaintiff<br><br>v.<br><br>TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,<br>    Defendant | §<br>§<br>§<br>§  CIVIL ACTION NO. _____<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Sunil Thakran (hereinafter "Plaintiff"), and complains of Defendant, Texas Comptroller of Public Accounts (hereinafter "Defendant"), and would respectfully show unto the Court as follows:

### I.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§1331 and 1343. In addition, Plaintiff invokes this Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq. (hereinafter "Title VII").

### II.

### PARTIES

2.      Plaintiff, Sunil Thakran, identifies as an Indian/Asian/Pacific Islander American citizen of the United States, and a resident of Leander, Texas. At all times relevant hereto,

Plaintiff was an employee of Defendant. Plaintiff has been subjected to unlawful employment practices committed in Austin, Texas by employees and agents of the Defendant.

3.  Defendant, Texas Comptroller of Public Accounts, may be noticed of this lawsuit by serving the Texas Comptroller, Glenn Hegar, at 111 E. 17th Street, Austin, Texas 78774.

### III.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.  On or about December 2, 2022, Plaintiff filed a charge of employment discrimination against Defendant with a District Office of the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act. Any allegations in this action which pertain to events that occurred after 300 days of the last discriminatory act pertain to allegations of continuing violation.

5.  The EEOC issued Plaintiff a "Notice of Right to Sue" concerning the Charge of Discrimination by letter dated August 31, 2023, entitling him to institute a civil action within 90 days of the date of receipt of said notice. This action is timely filed.

### IV.

### FACTS AND CAUSES OF ACTION

6.  This action is authorized and instituted pursuant to Title VII. This is a legal proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under these statutes.

7.  Beginning in approximately April 2020, and continuing through April 4, 2022, Plaintiff was repeatedly subjected to discrimination based on his race/color and/or national origin (brown and Indian/Asian/Pacific Islander American), and also suffered retaliation after making

several complaints to Human Resources ("HR") about his Supervisor's racially discriminatory comments, and hostile work environment in violation of Title VII.

8. Plaintiff was employed with Defendant for approximately two (2) years, from April 2020 until April 4, 2022, when Plaintiff was forced to resign (constructive discharge) as a result of the hostile work environment created by Plaintiff's Supervisor. Plaintiff's last job title was Programmer Analyst in the Web Applications Department.

9. On Plaintiff's very first day at work, his Supervisor told him: "You are an hourly contractor and you make more money than I do, so make sure every single hour you work is accounted for; try not to steal from me." At that time, Plaintiff was working for a consulting company and was a contractor for Defendant, but later became a full-time employee of Defendant. Plaintiff reported that comment to his consulting company, but never heard anything about it again.

10. Shortly after that incident, Plaintiff's Supervisor began calling him on his personal cellphone almost every single day, after hours, grilling Plaintiff about the work he completed for that day. These phone calls lasted 15-30 minutes, and Plaintiff was never compensated for that time, nor was he allowed to request overtime.

11. Plaintiff became a U.S. citizen in November 2020. He was so excited to share the news to his team at one of their team meetings. Upon sharing the news, Plaintiff's Supervisor stated in front of everyone: "You can start paying taxes now." Plaintiff was shocked and everyone in the meeting got quiet.

PLAINTIFF'S ORIGINAL COMPLAINT

12. Shortly thereafter, Plaintiff and his teammates had a meeting with Plaintiff's Supervisor's manager, where Plaintiff was allowed to voice his concerns about the racial comments being made by his Supervisor. The manager downplayed his complaints, stating: "That is just his management style; he's old-school."

13. After this meeting, Plaintiff filed an anonymous complaint with the HR Department. A representative from HR interviewed Plaintiff a few days later. Plaintiff was never told by anyone in HR about the results of any investigation that was conducted after his statement was taken, and his Supervisor not only remained the same, but his actions and comments got worse.

14. The work environment became more and more hostile as time went on, especially after Plaintiff's complaint to HR. Plaintiff's Supervisor was micro-managing Plaintiff every day; blaming and shaming him in front of his team; eye rolling and scoffing when Plaintiff would speak; cutting Plaintiff off mid-sentence when he would speak; and yelling at Plaintiff publicly and privately. Plaintiff's Supervisor would even ask Plaintiff about work that should have been completed, even though he knew that Plaintiff was out on FMLA during that time period. Plaintiff's Supervisor bullied Plaintiff and Plaintiff was in constant fear of being terminated. Plaintiff's Supervisor also made sure Plaintiff received his yearly raise about a month after the rest of his team had already received their raises.

15. Plaintiff's Supervisor also made racial remarks toward other immigrant employees on Plaintiff's team. Some of these employees also made complaints to HR about the

racial discrimination, but HR did not take these complaints seriously, and thereby failed to remedy the situation or stop Plaintiff's Supervisor's actions.

16. As a result of all of the stress Plaintiff endured at the hands of his Supervisor, he was diagnosed with Temporomandibular Joint disorder ("TMJ"), and had to receive physical therapy. Plaintiff also suffered anxiety and insomnia, and had to seek counseling. Plaintiff's psychiatrist prescribed medication to Plaintiff to help him with these conditions.

17. As the result of receiving no help from upper management or HR, and because Plaintiff's mental and physical health was declining, Plaintiff made the hard decision to resign from his job effective on or about April 4, 2022. Even though Plaintiff had planned to retire from this job in 2045, he could no longer take the hostile and toxic work environment.

18. On information and belief, Defendant followed a policy and practice of discrimination based on race/color and/or national origin, as well as retaliation against Plaintiff based on Plaintiff's complaints to upper management and HR about racial remarks made by Plaintiff's Supervisor, which created a hostile work environment, all in violation of Title VII. These discriminatory and retaliatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on his race/color and/or national origin, and retaliating against employees who make formal complaints, in violation of Title VII.

19. Plaintiff was subjected to a hostile work environment and adverse employment actions by Defendant based on Plaintiff's race/color and/or national origin, and/or complaints of

racism to upper management and HR.

20. Plaintiff has suffered compensatory damages as the direct result of Defendant's discriminatory and retaliatory actions.

21. Defendant's conduct toward Plaintiff caused him severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

22. The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

23. All conditions precedent to the filing of this action have occurred or have been fulfilled.

## V.

## DAMAGES

24. Plaintiff seeks statutory damages, back pay and front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and postjudgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to Title VII.

25. Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

## VI.

## JURY DEMAND

26. Plaintiff respectfully requests a jury trial.

## VII.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and postjudgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
P.O. Box 851553
Mesquite, Texas 75185-1553
Telephone: (214) 417-2738
Telecopier: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**